**SPAUR et ux. v. CITY OF PAWHUSKA.**

No. 23439. April 16, 1935.

Rehearing Denied May 21, 1935.

L. A. Justus, Jr., and Holcombe, Lohman & Barney, for plaintiffs in error.

Humphrey & Spence and Gray & Palmer, for defendant in error.

BUSBY, J. On November 19, 1931, Calvin Spaur, a seven year old child, was killed by a motor-driven truck while crossing a street in the city of Pawhuska. The truck was owned by the city and was being driven by one Jack Camp, a city employee.

The parents of the child, Ed. E. Spaur

and Lenora Spaur, commenced this action in the district court of Osage county in which they seek to recover from the city of Pawhuska, a municipal corporation, the sum of $55,254 for the death of their son, which they allege was caused by the negligence of the city employee who was driving the truck.

With respect to the nature of the duties being performed by the city employee at the time of the unfortunate occurrence, the petition states:

"* * * That said agent and employee was using said truck in the course of his employment and in the discharge of his duties as said agent and employee of the defendant city, in cleaning the streets and storm sewers"

—and in describing the particular acts which the city employee and his associate had been performing immediately prior to the injury and just before the truck had been set in motion, the petition states:

"* * * Jack Camp or his helper proceeded to remove trash, leaves, dirt and rubbish from said catch basin or storm sewer and to throw same into the rear of said truck, said work being within the scope of their authority."

The trial court sustained a demurrer to the petition of plaintiffs, who elected to stand on their petition and refused to plead further. Whereupon an order of dismissal was entered. For the purpose of convenience the parties will be referred to in this opinion as they appeared in the court below.

The defendant says that the decision of the trial court was justified for the reason that the petition of the plaintiffs discloses on its face that the employee of the city, whose alleged negligence caused the child's death, was at the time of the occurrence engaged in the performance of a governmental duty of the city as distinguished from a proprietary or corporate duty. The plaintiffs assert the negative of this position and thus present the principal issue involved in this appeal.

As we understand the briefs, the parties to this appeal agree that the petition states sufficient alleged facts to show negligence on the part of the city employee. However, no effort is being made to obtain redress from the employee as an individual. The theory of the plaintiffs is that the case presents a situation where the city of Pawhuska, as a municipal corporation, is civilly responsible for the negligent acts of its employee under the doctrine of agency bottomed on the maxim respondeat superior. We shall, therefore, in the subsequent portions of this opinion, confine our attention to those portions of the petition which bear upon the questions presented treating as sufficient the averments in the pleading which deal with the alleged negligence of the city employee.

In the form in which this case comes to this court, there is presented an opportunity to urge in argument elements of individual hardship which appeal to sympathy and are well calculated to divert the mind from the questions of law which govern the action and which must become the basis of our decision. The opportunity has not been overlooked in the able brief prepared by counsel for the plaintiffs.

On the principle that a remedy should be provided for every wrong, courts have sometimes been astute in discovering reasons for municipality liability in cases of this character. However, in determining the class of cases in which a municipality is civilly liable for tort, the distinction between governmental and corporate functions has been carefully preserved, and it has been held with practical unanimity that a city cannot be made to respond in damages for wrongs committed by its agent or employee while engaged in the performance of governmental duties. A municipality is but a subdivision of the state engaged in exercising some of the functions of government in a limited locality. So long as it confines its activities to matters of purely governmental concern, it enjoys the same immunity from civil liability that is enjoyed by the state itself, unless the immunity from liability has been removed by statute. This is based upon the underlying theory that a government should not be hampered by a vast mass of litigation arising out of the exercise of governmental functions. However, when a municipality extends its activities to proprietary or corporate functions, it places itself in the same general position as a private individual or corporation and is civilly responsible for the negligence of its agents while engaged in the performance of proprietary or corporate duties.

This distinction which forms the basis for determining municipal liability in damage actions has been repeatedly recognized by this court. Oklahoma City v. Baldwin, 133 Okla. 289, 272 P. 453; City of Shawnee v. Roush, 101 Okla. 60, 223 P. 354; Oklahoma City v. Foster, 118 Okla. 120, 247 P. 80. The difficulty arises in the application of the rule and in differentiating between governmental and proprietary functions in individual cases. See Adelbert Harris v. District of Columbia (U. S.) 65 L. Ed. 1146, 41 Sup. Ct.

Rep. 610, 14 A. L. R. 1471. It is the character of the duty being performed by a municipal agent or employee which determines whether the act is in furtherance of a governmental or proprietary function. Scibilia v. Philadelphia, 279 Pa. 549, 124 Atl. 273, 32 A. L. R. 981, at page 986. In order, then, to determine whether the case at bar presents a situation in which the city of Pawhuska is responsible for the negligent acts of its employee, we must answer the narrower question: Is the cleaning of the streets and sewers a governmental or corporate activity?

Streets and sewers fall in the same class with respect to their classification as governmental or proprietary activities of a municipality. It has been repeatedly held in this jurisdiction that the maintenance of streets is a proprietary duty and that cities are responsible to the traveling public for failure to keep their streets in a safe condition for the use of the traveling public, provided, of course, they have notice or knowledge of the existence of any defect. Likewise it is the rule in most jurisdictions that the maintenance of sewers, both sanitary and storm, is one of the corporate duties of a municipality. 43 C. J. 1130; McQuillin on Municipal Corporations (2d Ed.) par. 2869. Oklahoma is one of the jurisdictions which adheres to this view. Oklahoma City v. Stewart et al., 76 Okla. 211, 184 P. 779; Sayre v. Rice, 132 Okla. 95, 269 P. 361. Thus the maintenance of both sewers and streets are corporate functions of municipal governments and the city would be civilly liable for the negligent acts of its agents or employees engaged in the maintenance or repair of either streets or sewers.

However, there is a vivid distinction between cleaning a street or sewer and maintaining or repairing the same. Taken in its ordinary sense and nothing to the contrary appearing, the act of cleaning either a street or sewer is a health measure and as such is a governmental duty. Thus in the case of Harris v. District of Columbia, supra, the Supreme Court of the United States, in deciding a question very similar to the one presented in the case at bar, said:

"But, nothing else appearing, we are of opinion that, when sweeping the streets, a municipality is exercising its discretionary powers to protect public health and comfort, and is not performing a special corporate or municipal duty to keep them in repair."

In the case of City of Muskogee v. State Industrial Commission et al., 150 Okla. 94, 300 P. 627, this court, after stating that the duties of the respondent, or claimant, in that case were to "sweep the streets, load the sweepings in a truck and aid in hauling the same to the dumping grounds," said:

"The respondent in this case was in the employ of the city of Muskogee. He was engaged in sweeping the streets in order to keep the streets in a clean and healthful condition. This would fall within the governmental powers of the city, in that it is the duty of the city to keep its streets in a clean, safe, and healthful condition for the benefit and protection of the citizens thereof."

In the case of Scibilia v. Philadelphia, supra, the Supreme Court of Pennsylvania observed:

"The care of public health is undoubtedly a subject-matter of general concern, and how it shall be accomplished is a public question. When the Legislature leaves its accomplishment to any degree in the hands of the several municipalities, they act as governmental agencies, and not as business corporations, in the performance of the power placed at their disposal, or of the duty thus put on them, whichever it may be. That cleanliness makes for health must be accepted as a truism, and that the regular, systematic gathering by municipalities of refuse, including ashes, and the proper, orderly, and efficient disposal thereof, promote cleanliness, is apparent. Such gathering and disposal of refuse is primarily a health measure, the duty to perform which might have been placed on the health department; the fact that it was put elsewhere makes it none the less a health measure, and, hence, a public or governmental function within the police power."

Similarly, this court, in the case of Oklahoma City v. Baldwin, supra, held that the removal of "garbage and rubbish" is a health measure and a governmental function. Likewise, the flushing of sewers has been judicially classified as a health measure, and, therefore, a governmental function of a municipal authority. Eastern Illinois State Normal School v. City of Charleston (Ill.) 111 N. E. 573.

Viewing the case at bar in the light of the foregoing authorities, it is apparent that the employee of the city of Pawhuska, who is alleged to have been negligent in this case, and who was at the time of the alleged negligent act engaged in "cleaning the streets and sewers," was performing a service designed for the protection of the public health. This service was properly classified by the trial court as one of the governmental duties of the city. By reason of its classification, the city was immune

from liability for the alleged negligent acts of its employee while so engaged.

Plaintiffs call our attention to the cases of Oklahoma City v. Foster, 118 Okla. 120, 247 P. 80; City of Shawnee v. Roush, supra; Cummings v. Lobsitz et al., 42 Okla. 704, 142 P. 993; City of Tulsa v. McIntosh, 141 Okla. 220, 284 P. 875; City of Chickasha v. Daniels, 123 Okla. 73, 251 P. 978; City of Enid v. Brooks, 132 Okla. 60, 269 P. 241; and City of Sayre v. Rice, supra. We find nothing in any of these decisions that conflicts with the views herein expressed. Plaintiffs also direct our attention to numerous authorities from other states, some of which are not entirely in accord with the views of this court as expressed in this and previous opinions.

It may be observed at this point that municipalities have long been targets for litigation and that various conflicting views have been expressed by the courts of last resort in the different states. Our own views as expressed by our previous decisions are in many respects quite liberal in allowing recovery. For instance, we classify the maintenance and repair of streets and sewers as a proprietary function of government, whereas several of our sister states adhere to the view that both of these duties are strictly governmental. However, the great weight of authority of this and other jurisdictions supports the view that the cleaning of streets and sewers and the removal of garbage and rubbish is a health measure and a governmental function.

Plaintiffs in their brief also urge that, even though the acts of the municipal employee in this case be classified as governmental in their nature, since the employee was using the streets to perform these duties, he was rendering the streets unsafe by the manner in which he used them, and that the city would therefore be liable. We are not impressed with this argument. The rule that renders the city liable for the unsafe condition of its streets applies particularly to the condition of the streets and not the danger created by the manner in which the streets are used.

The decision of the trial court in this case is affirmed.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.