JOHNSON *v.* CITY OF JACKSON.

(*Jackson*, April Term, 1952.)

Opinion filed June 7, 1952.

HUGHIE RAGAN, of Jackson, for plaintiff in error.

WILLIAM E. LEECH, of Jackson, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

A policeman of the City of Jackson, Tennessee, while operating a city-owned motorcycle over the streets of Jackson in performance of his duty of checking the parking meters of the city, ran over the plaintiff-in-error, James F. Johnson. Serious injuries resulted. Johnson brought this suit against the city to recover damages.

The city demurred to the declaration on the ground that it affirmatively disclosed this to be a suit to recover damages for alleged mere negligence of the city in the exercise of a govermental function. The Court sustained this demurrer, and dismissed the bill. Johnson has appealed.

The declaration alleges, insofar as material to the determination of the issue made, that the city maintained parking meters for its benefit ''in its individual corporate capacity'', and that this policeman was assigned to the duty of checking these parking meters ''to see if person had placed the funds due the city in same'', and that, for the performance of this duty, the city furnished this

policeman a motorcycle which the city knew was so constructed that the handle bars and windshield ''interfered with the vision of ''the policeman in driving it along the streets, and that the city knew that motorcycles more suitable for this use were available to it on the open market. The declaration further alleged that the eyesight of this policeman was known by the city to have been defective and, in spite of this knowledge, had failed to require this policeman ''to wear eyeglasses so that the lives of persons would not be in jeopardy''.

The theory of plaintiff-in-error is that the declaration affirmatively shows (1) the city to have been in the exercise of a corporate function, rather than of a governmental function, in maintaining and checking these parking meters, and, (2) if mistaken as to this, that the city was maintaining a nuisance in (a) using for the checking of the parking meters a motorcycle known to be equipped with a windshield that was insufficient to permit its driver ''to see vehicles and persons in the pathway'' and (b) keeping in its employ for the driving of this motorcycle a policeman whose eyesight was known to be defective, and not ''requiring him to be fitted with proper eyeglasses''.

 When a municipality is acting only in its proprietary capacity its liability for torts is the same as that of an individual. When it is engaged in the exercise of a governmental function its liability is limited to cases wherein the damage results from the maintenance of a nuisance. The first problem, therefore, for solution in the present case is whether Jackson was functioning in its corporate capacity on the one hand, or, on the other hand, was engaging in the exercise of a governmental function in maintaining these parking meters.

■ With the advent of motor vehicles the regulating and policing of traffic during business hours on the streets of a municipality became more difficult. The problem became more and more complex with the ever increasing use of these vehicles. Eventually, as a material aid in regulating and policing such increasing traffic, there came into being, and into a progressively increasing use by municipalities, a device commonly known as a parking meter. One Court called them "mechanical policemen". Inasmuch as the municipality in regulating and policing traffic on its streets is exercising a governmental function, it is necessary, on principle, to conclude that the use of parking meters, as an aid in such regulation, is an exercise by a municipality of a governmental function.

The declaration alleges that the City of Jackson is maintaining those parking meters "in its individual corporate capacity". That statement, without more, is only a statement of the pleader's conclusion. It is insufficient to overcome the fact that a municipality, in the maintaining of parking meters, is exercising its police power of regulating traffic on its streets. At most, the above stated conclusion of the pleader can amount only to an allegation that the City of Jackson is exacting a charge of persons parking their cars on the streets of the city. It may exact a charge in order to thereby defray the costs and expenses of maintaining this device for policing traffic. *Porter* v. *City of Paris*, 184 Tenn. 555, 201 S.W. (2d) 688. The fact that the charge produces more than the actual expense of such maintenance does not convert this governmental act of the city into a proprietary act. *Porter* v. *City of Paris*, supra, 184 Tenn. at page 562, 201 S. W. (2d) 688.

We, therefore, conclude that the declaration on its face discloses it to be a fact that the city of Jackson was acting

in its governmental capacity in the matter out of which this accident arose. It follows that the declaration does not state a cause of action against the city unless it alleges facts which constitute a nuisance.

It is insisted that the declaration does allege the commission by the city of a nuisance in that it alleges the city to have knowingly (1) kept in its employ for the driving of this motorcycle a policeman whose eyesight was known to be defective, and without requiring him to wear proper glasses, and (2) using for the checking of these parking meters a motorcycle so defectively equipped as to windshield as to be insufficient to permit its driver to see obstacles ahead in its path.

The law in this state is that the employment of a policeman known to be unsuited for the performance of the duties assigned him is "merely a charge of negligence against the city in the matter of selecting its agents for carrying out its laws", and that when such agent is employed in the exercise of a governmental function the "municipality could not be held liable for negligence about such matter". *Combs* v. *City of Elizabethton*, 161 Tenn. 363, 366, 31 S. W. (2d) 691.

As to the use by a municipality of unsuitable machinery being a nuisance, while we find no Tennessee decision directly in point, it would be extremely illogical and inconsistent for this Court to hold that the use by a municipality of a machine known to be unsuitable is a nuisance for which the city is liable, even though in the exercise of a governmental function, and at the same time to hold, as this Court has in the City of Elizabethton case, supra, that the use of a policeman known to be unsuited for the work is not a nuisance, but mere negligence.

By analogy, under the holding of the City of Elizabethton case, supra, this Court is compelled to conclude that

the allegation with reference to the use of a motorcycle known to be defective in the exercise of the governmental function mentioned is nothing more than a charge of negligence against the City of Jackson, and that it cannot be held liable for such negligence in the exercise of its governmental function of policing traffic on its streets. The text of 63 C. J. S., Municipal Corporations Sec. 903, page 308, supports the conclusion just stated with the statement that "On the same principal the municipality has been held not liable for injuries resulting from defects in * * * vehicles and appliances used by the police department", citing the North Carolina case of *Cathey* v. *City of Charlotte,* 197 N. C. 309, 148 S. E. 426.

For the reasons stated, the judgment of the Circuit Court sustaining the demurrer and dismissing the bill will be affirmed. The costs will be adjudged against plaintiff-in-error.