Tiffany EVANS, Appellant,

v.

BRIDGESTONE–FIRESTONE, INC. d/b/a Firestone Tire & Rubber Company, Appellee.

No. 84790.

Court of Appeals of Oklahoma, Division No. 4.

June 20, 1995.

Certiorari Denied Sept. 27, 1995.

Mark Hammons, Michelle Robertson, Oklahoma City, for Appellant.

Kenneth D. Upton, Jr., Michael L. Noland, Niemeyer, Noland & Alexander, P.C., Oklahoma City, for Appellee.

## OPINION ON REHEARING

GOODMAN, Presiding Judge.

This appeal has been assigned to the accelerated docket pursuant to Civil Appellate Procedure Rule 1.203(A)(1)(a), 12 O.S.Supp. 1994, ch. 15, app. 2, after the trial court granted summary judgment to the defendant in the plaintiff's action seeking actual and punitive damages for fraud and deceit allegedly practiced by the defendant. Based upon our review of the record and applicable law, we reverse and remand with instructions.

### I

■ We are presented with a pure question of law: Whether the plaintiff's action for fraudulent misrepresentation of a material fact is barred by a "Release and Indemnity Agreement" executed in settlement of the plaintiff's claim for property damage. The trial court held that the plaintiff had "released any and all claims known or unknown."

We reject defendant Firestone's three briefed legal propositions, and hold that the trial court erred as a matter of law in holding the release executed by the plaintiff is a bar to her cause of action based upon fraudulent misrepresentation. However, because judgment was entered before Firestone responded to Evans' cross-motion, the matter must be remanded to the trial court for further proceedings.

■ A release is a contract. *Corbett v. Combined Communications Corp. of Oklahoma, Inc.*, 654 P.2d 616 (Okla.1982). While it is the "policy of the law to encourage the settlement and compromise of controversies as a discouragement to litigation," it is *fundamental* that this court will "not hesitate to set aside a release where it could be shown that the release was obtained by fraud or misrepresentations on the part of the defendant which misled the injured party into signing the instrument...." *St. Louis & S.F. Ry. v. Chester*, 41 Okla. 369, 138 P. 150 (1914). The burden of proof "is upon the assailant of a written agreement or settlement who seeks to have the same rescinded for fraud or mistake to establish such grounds by clear and convincing evidence." *Birch v. Keen*, 449 P.2d 700 (Okla.1969) (syllabus by the court).

The relevant provisions of 15 O.S.1991 § 58, define "actual fraud" as:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

. . . .

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.]

*See also* 76 O.S.1991 § 3(1) and (3). As the court explained in *Tice v. Tice*, 672 P.2d 1168, 1171 (Okla.1983):

Actionable fraud consists of a false material representation made as a positive assertion which is known either to be false, or made recklessly without knowledge of the truth, with the intention that it be acted upon, and which is relied upon by a party to his/her detriment.... The basis of

fraudulent misrepresentation is the creation of a false impression and damage sustained as a natural and probable consequence of the act charged. The fraudulent representation need not be the sole inducement which causes a party to take the action from which the injury ensued. The key is that without the representation the party would not have acted. The liability for misrepresentation depends upon whether the person relying thereon was in fact deceived, not upon whether an ordinarily prudent person should have been misled. (Footnotes omitted.)

We find that, based upon the record before us, plaintiff Evans has presented sufficient material facts in support of her allegations that defendant Firestone willfully failed to disclose material information pertaining to the plaintiff's claim of property damage to her automobile, that Firestone affirmatively misrepresented and concealed its nondisclosure by creating false documentation, and that Evans "would not have signed the release had the true facts been disclosed to her," (Plaintiff's Uncontroverted Fact No. 15), but would have negotiated "for more compensation or a new rebuilt engine." (Plaintiff's Exhibit C). As a result, we hold that the trial court erred as a matter of law in holding that Evans had "released any and all claims known or unknown."

■ We next must determine whether plaintiff Evans has presented sufficient evidence of her allegation of underlying fraud. Title 76 O.S.1991 § 3, establishes liability for one who makes a "promise, made without any intention of performing." *See also,* 15 O.S.1991 § 58(4). "There is a wide distinction between the nonperformance of a promise and a promise made *mala fide,* only the latter being actionable fraud." *Citation Co. Realtors, Inc. v. Lyon,* 610 P.2d 788, 790 (Okla.1980). In such a case, the "gist of the fraud ... is not the breach of a promise, but the fraudulent intent of the promisor or obligor at the time he makes the promise or executes the contract, not to perform the same, and to deceive the obligee by his false promise." *Mid–West Chevrolet Corp. v. Noah,* 173 Okla. 198, 201, 48 P.2d 283, 287 (1935).

The only possible evidence of fraudulent intent is found in the excerpted deposition testimony attached as Exhibits D and E to Evans' motion for summary judgment.

Larry Conley, the technician who installed the replacement engine, testified that Evans' car was towed to Firestone and that another employee, Jeff Savage, told Evans "we'd get it handled." Savage asked Conley if he could rebuild Evans' engine, and Conley replied that "I'll have to tear it down and look." Conley later told Savage that "he'd be better off to buy a motor." Savage replied, "I'll get you an engine."

Later that same day, Conley said Evans came to Firestone, and Conley "was standing there" when "Jeff Savage told [Evans] that we were going to purchase an engine from Horton Engines and that I was going to install that engine." He said Evans "thought it was great." Instead, he said a flatbed pickup truck from a salvage yard delivered a used engine, he made minor repairs to the engine, washed it, "shot a coat of paint on it and installed it in the vehicle. Same day."

Former Firestone employee Rick Brown, the plaintiff in the wrongful termination lawsuit in which Evans was called to testify, recalled Jeff Savage telling Evans that "because her engine was in such poor shape," Firestone "would have to get a used engine, send it to Horton's and have it rebuilt and then install it in her car.... We had, at that time, already purchased the used engine." Brown said "that was not, in fact, done" and that after Evans left, "Jeff told the technician working on the car to wash the engine and paint it ... and install it in her car."

In *Blackburn v. Morrison,* 29 Okla. 510, 118 P. 402 (1910), the purchaser of realty promised to pay cash for the land, but when the buyers came to execute and deliver the deed, the purchaser said he did not have the money, but would pay the sellers the next day at a specific bank. The sellers executed and delivered the deed, which the purchaser "placed upon record." The sellers' demand for payment or reconveyance was refused, and the sellers filed an action to cancel the deed.

The court noted that "[i]t would be an unreasonable presumption to presume that defendant's refusal without explanation with-

in so brief a time to pay over the consideration agreed upon did not flow from an intent not to do so at the time of the delivery of the deed." The court then quoted the following salient pronouncement from *Dowd v. Tucker*, 41 Conn. 197 (1874).

> Now, it is a presumption of law that a party intends to do what in fact he does; and, the fact appearing in the case that after the property came into the hands of the respondent he at all times absolutely refused to convey it to the petitioner, it must be that during some period of time previous to his first refusal he must have so intended; and inasmuch as there is nothing in the case which goes to show a different intention at any previous time, *it is reasonable to presume that this intention existed during the short period of time that had intervened since the promise was made, and existed at the time it was made, from which it follows that the promise was made in bad faith,* with the dishonest intention to do what he afterwards did. If this was so, then the case is clearly one of fraud. It is the case of one obtaining the conveyance of property by a promise, which he has no intention at the time to fulfill. (Emphasis added.)

Similarly, in the matter before us, the plaintiff has presented evidence that a promise was made to replace Evans' damaged, rebuilt engine with a "rebuilt from Horton's"; that Evans was "turfed"—a term Conley said means "[h]e got her out of the shop so we could work on" the engine; that a salvage yard engine was delivered to Firestone and Jeff Savage instructed Conley to wash, paint and install the salvaged engine in Evans' car. All this, according to Conley, occurred on the same day, with no attempt to either transport the salvaged engine to Horton's for rebuilding or secure a rebuilt engine.

Based upon the foregoing, we hold that Evans has presented sufficient evidence to withstand Firestone's motion for summary judgment.

■ In its petition for rehearing, Firestone argues that Evans' unanswered cross-motion for summary judgment cannot serve as a basis for granting judgment in her favor because the trial court granted judgment "one day prior to Firestone having filed its response." Firestone contends that Evans' "asserted facts ... are very much in dispute." Evans states that Firestone "does not suggest that such facts exist and therefore has not shown that any substantial right has been denied by the entry of a verdict [*sic*] of liability."

■ Generally, a party seeking to set aside a judgment "must, if the defendant, set up in such motion or petition, a valid defense against the judgment rendered [and an] averment that the defendant has a good defense ... is not sufficient." *Tracy v. State ex rel. Fancher*, 60 Okla. 109, 159 P. 496 (1916). Summary judgment, however, is a procedure designed to determine whether there is conflicting evidence on the existence of a material fact. *Anderson v. Falcon Drilling Co.*, 695 P.2d 521, 526 (Okla.1985). We agree with Firestone that until it has been afforded an opportunity to respond to Evans' cross-motion, summary adjudication is improper.

Accordingly, the judgment appealed is reversed, and the matter is remanded for further proceedings.

REVERSED AND REMANDED.

STUBBLEFIELD, J., and REIF, J. (sitting by designation), concur.